```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Dominick Barone,
                                              06-CV-3675
                       Plaintiff,             (CPS)(MDG)

       - against -

John Luongo and Marie Luongo,                 MEMORANDUM
                                              OPINION AND
                                              ORDER

                       Defendants.

----------------------------------------X
```

SIFTON, Senior Judge.

Plaintiff Dominick Barone ("Barone") brings this action against defendants John and Marie Luongo (collectively, "the Luongos"), husband and wife, alleging that defendants negligently constructed steps leading out from the side entrance of their former residential property, causing plaintiff to trip and fall four days after plaintiff took title of defendants' residential property. Plaintiff seeks damages[1], costs, and attorney's fees. Presently before the Court is defendants' motion seeking reconsideration of this Court's ruling on June 28, 2007, denying defendants' motion for summary judgment.[2] For the reasons set

---

[1] Plaintiff seeks "punitive damages, exemplary damages, [and] treble damages." Complaint ¶ 13. Plaintiff also states that the amount at issue "exceeds the jurisdictional limitation of all lower courts." *Id.*

[2] The defendants' motion does not specify the Federal Rule of Civil Procedure or Local Rule pursuant to which the motion for reconsideration was filed. Based on the defendants' papers I construe their motion to be filed under Fed. R. Civ. P. 59(e) and Local Rule 6.3.

While some courts hold that a motion under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment can be brought only

forth below, the defendants' motion for reconsideration is denied.

## BACKGROUND

The following facts are taken from the Complaint, the submissions of the parties in connection with this motion and defendants' earlier motion for summary judgement, and the transcript of the oral argument heard on June 28, 2007. Factual disputes between the parties are noted.

Plaintiff Barone is domiciled in Staten Island, Richmond County, in the State of New York. Defendants John and Marie Luongo are domiciled in Marlboro, Monmouth County, in the State of New Jersey. Accordingly, this Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

Defendants John and Marie Luongo owned residential property at 65 Roma Avenue, Staten Island, New York from 1961 until October 2004. Defendant John Luongo was born in 1930 and retired from law enforcement in 1992. Plaintiff Barone lived on the same street as the Luongos when he was a child. In 1998 or 1999, defendant John Luongo, with his wife's assistance, installed a wooden exterior staircase on the side of the house at

---

after a trial, "[m]ost courts, however, including those in this circuit, allow a motion to amend a grant of summary judgment to be brought under Rule 59(e)." *Patel v. Lutheran Med. Cent., Inc.*, 775 F.Supp. 592, 596 (E.D.N.Y. 1991) (internal citations omitted).

65 Roma Avenue. The staircase replaced concrete steps that were previously attached to the house. The wooden staircase consists of a platform with two sets of steps, one set of steps leading towards the front of the property and one set of steps leading towards the back of the property. Defendant John Luongo testified in his deposition that he did not have training in home improvement or contracting. John Luongo Dep., p. 7. He had not installed a staircase before. *Id*. at p. 20. In preparation for the installation, John Luongo bought a "how-to-do-it book," or home improvement manual, at a hardware store. *Id*. at p. 22. Defendant John Luongo also consulted with Louis Pate ("Pate"), an experienced builder who built the Luongos' home, regarding how to build an exterior staircase. *Id*. at p. 23. Pate informed John Luongo that the height of the steps' risers should be at least eight inches and each step, or "tread," should "come out" about ten inches. *Id.* at p. 34. John Luongo did not prepare any drawings of the staircase he intended to build prior to building it. He did not consult with a building engineer or architect, *id.* at p. 23, nor did he review any provisions of the New York City building code prior to building the staircase. *Id.* at p. 33. He did not consult with anyone regarding the building code requirements for the height of the risers and the width and depth of the steps. When he purchased pre-cut wood for building the steps from a hardware store, defendant John Luongo did not inform

the hardware store representatives about the height of the side door entrance from the ground. *Id.* at p. 36. He did not consult with anyone about the proper height of the steps' railing. *Id.* at p. 54.

In September 2004, Plaintiff signed a contract to purchase the property at 65 Roma Avenue from the Luongos. Barone Dep., p. 9. The closing of title occurred on October 6, 2004. Plaintiff had visited the premises once before signing the purchasing contract and on the day before the closing of title. *Id.* at p. 9. Except for normal wear and tear, defendant John Luongo contends that the side exterior steps were in the same condition on the date of sale to plaintiff as they were when John Luongo installed them. Def.'s Rule 56.1 Statement ¶ 9 (citing John Luongo Dep., p. 43).

Plaintiff states that on the morning of October 10, 2004, he went to the premises "to do some interior painting before moving in." Barone Affidavit ¶ 3. At approximately 10:30 a.m., he used the staircase for the first time. As he moved to descend the steps going towards the front of the property, plaintiff put his left foot forward towards the first step. When the back of his left foot hit the first tread, his ankle twisted and snapped. He fell down the stairs on his back. Barone Dep., p. 25-26. Plaintiff states that the top step leading from the platform towards the front of property, the step on which plaintiff had

placed his left heel when he fell, is abnormal.  It is "like a baby step."  *Id.* at p. 27.  *See* Def. Exh. C, Photograph of Exterior Side Steps.[3]

Defendant John Luongo states that he has no knowledge of other individuals having problems descending the exterior staircase.  John Luongo Dep., p. 49-50.  No one had previously commented to John Luongo that the height and width of the first step was smaller than the height and width of the other steps.  *Id.* at p. 50.

On March 21, 2005, Steven L. Carroll ("Carroll"), a professional engineer, inspected the side entrance staircase of 65 Roma Avenue.  Carroll found that the first tread down from the top of the staircase measures nine inches in width instead of 10.75 inches, as required by the local building code.  Plaintiff's Exh. 1, Caroll Affidavit ¶ 6.  Carroll also found that the total length of the top riser (measuring 5.5 inches), the second riser (measuring 6.75 inches), and the top tread was 21.25 inches, which is lower than the length of 24 inches required under the New York City building code.  *Id.* ¶ 7.  Moreover, Carroll determined, the riser heights and tread widths were not constant as required and the height of the handrail exceeded code requirements by 6 inches.  The material used did

---

[3] In the photograph, the top step appears significantly shorter than the other steps in the photograph.

not produce a non-skid surface. *Id.* Carroll opined that the plaintiff's fall and consequent injuries were, to a reasonable degree of certainty, caused by the code violations in the staircase's construction. Plaintiff's Rule 56.1 Statement ¶ 8.

On June 28, 2007, I heard oral argument from both parties on defendants' motion for summary judgment. I denied defendants' motion for summary judgment in open court. For the reasons stated below, defendants' motion for reconsideration is denied.

**DISCUSSION**

Standard for Motion for Reconsideration

A motion for reconsideration pursuant to either Rule 59(e) of the Federal Rules of Civil Procedure or Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might materially have influenced its decision.[4] *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F.Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F.Supp.

---

[4] Essentially the same standard is used to determine Rule 59(e) motions as motions under the Local Rule. Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metropolitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004), and "district courts may alter or amend a judgment to correct a clear error of law or prevent manifest injustice." *Id.* (internal citations and quotations omitted); *see also Wood v. F.B.I.*, 432 F.3d 78, 85 n.4 (2d Cir. 2005) (affirming denial of Rule 59(e) motion where "district court did not commit error or a manifest injustice"). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

224, 226 (S.D.N.Y. 1993). Reconsideration is also appropriate if there is an intervening change of controlling law, new evidence, or the need to correct a clear error or prevent manifest injustice. *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, No. 98-CV-2333, 1998 WL 566772, at *1 (E.D.N.Y. Aug. 21, 1998).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F.Supp. 747, 748 (S.D.N.Y. 1985). In deciding a Local Rule 6.3 motion, the court will not allow a party to use the motion as a substitute for an appeal from a final judgment. *See Morser v. A.T. & T. Information Systems*, 715 F.Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F.Supp. 1547, 1548 (S.D.N.Y. 1986). Accordingly, a party in its motion for reconsideration "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86-CV-6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

Defendants' Motion for Reconsideration

Defendants state two legal grounds for the Court's reconsideration. The first ground is that the Restatement (Second) of Torts § 352 governs the facts of this action and that the exceptions provided for by Restatement (Second) of Torts §

353 do not apply to the facts of this case.[5] The second ground is that the "as is" clause found in the contract for sale between the plaintiff and defendants precludes the plaintiff from suing the defendants for a condition that already existed at the time plaintiff took possession of the property in question. The defendants do not present new evidence for the Court's consideration.

Both grounds stated by defendants are restatements of the legal arguments that they presented to the Court during oral argument for the underlying motion for summary judgment. *See*

---

[5] Restatement of Torts (Second) §352 states:

> Except as stated in § 353, a vendor of land is not subject to liability for physical harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

Restatement of Torts (Second) § 352.

Restatement of Torts (Second) § 353 states:
> (1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if
> (a) the vendee does not know or have reason to know of the condition or the risk involved, and
> (b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.
> (2) If the vendor actively conceals the condition, the liability stated in Subsection (1) continues until the vendee discovers it and has reasonable opportunity to take effective precautions against it. Otherwise the liability continues only until the vendee has had reasonable opportunity to discover the condition and to take such precautions.

Restatement of Torts (Second) § 353.

Tr., pp, 3-5.[6] These arguments have already been presented to and considered by the Court in reaching its decision to deny defendants' motion for summary judgment. On this ground alone, defendants' motion for reconsideration is denied.

In any event, the grounds stated by the defendants in their motion for reconsideration were considered and rejected by the Court in its denial. Defendants first argue that they are not liable to plaintiff because plaintiff has not alleged "that the defendants concealed or failed to disclose any condition which involves reasonable risk to persons on the property." Def.'s Memorandum in Support of Motion for Summary Judgment ("Def.'s Memorandum").

> At common law, a vendee could be held liable for injuries sustained as a result of a dangerous condition of the premises, even though such condition preexisted the time of the conveyance. An exception to this doctrine, which has been strictly construed, is where there is an undisclosed condition, and the vendee has no knowledge of this condition, or where the vendor actively conceals it, the liability remains with the vendor until the vendee has had a reasonable time to discover and remedy it. This exception also applies where the vendee has knowledge of the alleged dangerous condition at the time of the conveyance, as in the instant case, but sufficient time has not elapsed to allow the vendee to remedy the defect.

*Zucker v. Capitelli*, 736 F.Supp. 449, 452 (E.D.N.Y. 1990) (citing *Farragher v. City of New York*, 21 N.Y.S.2d 542 (Sup. Ct. 1966))

---

[6] During oral argument, defendants stated in part: "[I]t is our position that under Restatement (Second) of Torts § 352 our liability for any condition on the property ceased at the time that we conveyed title which was four days before this incident occurred." Tr. at 3. Defendants later stated: "He's a party to a contract and agreed to take this property as-is. *Id.* at 5.

(internal quotations omitted). *See also Fisher v. Braun*, 643 N.Y.S.2d 205 (Sup. Ct. 1996) ("While liability for a defective condition generally does not extend to a prior owner of the premises, an exception exists where a dangerous condition existed at the time of the conveyance [by the former owner] and the new owner has not had a reasonable time to discover the condition, if it was unknown, and to remedy the condition once it is known.") (internal citations and quotations omitted).

Drawing all inferences in favor of plaintiff, the non-moving party, plaintiff's allegation that he fell as a result of the faulty construction, suggests that plaintiff was unaware that the construction of the steps was defective until he fell and that defendants failed to disclose the dangerous condition to him. Given that plaintiff obtained title to the property only four days before the accident, which occurred at the side entrance of the house, not the main entrance, there are issues of fact as to whether plaintiff had a reasonable time to discover and remedy the defect. Even if plaintiff knew about the faulty steps, whether plaintiff had a reasonable time to fix the defect is also a jury question. *See Zucker*, 736 F.Supp. at 452 (denying summary judgment because even if defendant, who had acquired property two weeks prior to auto accident, had knowledge of allegedly dangerous condition on his premises (an eight foot tall fence which allegedly blocked view of street), whether defendant

had reasonable time to remedy the defect was a jury question); *Fischer v. Braun*, 643 N.Y.S.2d at 205 (denying summary judgment in part because questions of fact exist as to whether new owners of premises had reasonable opportunity to remedy problematic condition).

Defendants' argument that the "as is" clause in the contract of sale between plaintiff and defendants shields defendants from liability has also been considered and rejected. That clause provides that

> [t]he property hereinabove described has been inspected by the Purchasers, and is sold in its present condition without any representation by the Sellers regarding the same or regarding its fitness for any particular use or occupancy unless expressly set forth in this contract. No warranty or representation by Sellers shall survive delivery of the deed or possession unless otherwise specifically set forth in this contract.

Plaintiff's Exhibit C, Rider to Contract of Sale, p. 3.

> Under New York law, an 'as is' clause in a contract is interpreted to bar only actions based upon breach of warranty. Thus, it has been stated that the purpose of such a clause is to negate the existence of any representations by the seller as to the particular condition, fitness and type of the premises sold. It merely means that the purchaser must take that for which he bargained, reasonable use, wear, tear and natural deterioration excepted.

*International Clinical Laboratories v. Stevens*, 710 F.Supp. 466, 469 (E.D.N.Y. 1989). Courts have held that contracts will not be construed to absolve a party from his own negligence, "unless such intention is expressed in unequivocal terms." *Thompson-Starrett Co. v. Otis Elevator Co.*, 271 N.Y. 36, 41 (Ct. App.

1936), *cited in Willard Van Dyke Productions, Inc. v. Eastman Kodak Co.,* 12 N.Y.2d 301, 304 (Ct. App. 1963).

> The law looks with disfavor upon attempts of a party to avoid liability for his own fault and, although it is permissible in many cases to contract one's self out of liability for negligence, the courts insist that it must be absolutely clear that such was the understanding of the parties . . . . [I]t must be plainly and precisely provided that limitation of liability extends to negligence or other fault of the party attempting to shed his ordinary responsibility.

*Van Dyke Productions*, 12 N.Y.2d at 304 (internal citations omitted). The "as is" clause in the Contract of Sale between plaintiff and defendants precludes causes of action based on breach of warranty. However, the language of the clause "is not sufficiently explicit to absolve [defendants] from [their] own negligence." *Willard Van Dyke*, 12 N.Y.2d at 304 (citing *Mynard v. Syracuse, Binghamton, and New York Railroad Company*, 26 Sickels 180 (Ct. App. 1877), in which plaintiff agreed to "release and discharge the said company [defendant] from all claims, demands and liabilities of every kind whatsoever for or on account of, or connected with, any damage or injury to or the loss of said stock, or any portion thereof, from whatsoever cause arising", and court determined that, despite the breadth of the language employed, it was not explicit enough to absolve the defendant from own negligence); *see also Kaufman v. American Youth Hostels, Inc.*, 12 N.Y.2d 1016 (Ct. App. 1959) (holding that an agreement to release the defendant "of any and all

responsibility or liability of any nature whatsoever for any loss of property or personal injury occurring on this trip" lacked requisite clarity to relieve the defendant of liability for its own negligence); *Umbra U.S.A. v. Niagra Frontier Transportation Authority*, 693 N.Y.S.2d 371, 372 (Sup. Ct. 1999) (construing provision "This is an 'As is' Deal," plus rider language permitting defendant to cancel contract following an environmental study of premises, as precluding claims for breach of warranty, but not for other claims concerning *inter alia* "defendants prior actions on the property" because contract did not set forth such express and unequivocal terms).  Accordingly, defendants' motion for reconsideration is denied.

## CONCLUSION

For the reasons set forth above, defendants' motion for reconsideration is denied.

The Clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
          September 11, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                                United States District Judge